UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD SAMELA, | : | |
| *Plaintiff*, | : | |
| v. | : | No. 3:25-cv-445-SFR |
| IQVIA, INC., | : | |
| *Defendant*. | : | |

**RULING ON MOTIONS TO COMPEL**

Plaintiff alleges that after he was diagnosed with Multiple Sclerosis, his employer IQVIA, Inc. "subjected him to a myriad of discriminatory actions and terminated his employment." ECF 1. He claims disability discrimination, retaliation, and wrongful termination. *Id.* Pending before the Court are three Motions to Compel, all filed by Plaintiff. ECF 42, 57, 58. At the Court's urging, the parties conducted another meet and confer and filed a Joint Notice narrowing the dispute to certain documents on IQVIA's privilege log. ECF 71. Specifically, IQVIA asserts privilege over (1) a "termination justification" document that Plaintiff's manager drafted and submitted to Employee Relations ("ER"), and (2) documents related to three investigations of Plaintiff's complaints numbered RITM21691642, RITM21585063, and RITM22116798.

Because Plaintiff's third Motion to Compel, ECF 58, concerns Rule 30(b)(6) issues not presently in dispute, it is DENIED AS MOOT and without prejudice. The other two pending Motions to Compel, ECF 42 and ECF 57, are GRANTED IN PART as provided herein.

**A. Legal standard**

IQVIA invokes the attorney-client privilege based on the involvement of in-house counsel in these ER matters. Of course, simply because a business communication with in-house

counsel touches on legal concerns does not necessarily mean that it is privileged. As one trial court explained,

> A primary purpose of a company's human resources program is to ensure compliance with the myriad of laws regulating employer-employee relations…. Even without any attorney's participation, human resources work may very likely require consideration of relevant laws, and their application to the facts presented. Despite its legal content, human resources work, like other business activities with a regulatory flavor, is part of the day-to-day operation of a business; it is not a privileged legal activity.

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 45 (E.D.N.Y. 2013). The Second Circuit has clarified that when an attorney is involved in a business process, the attorney-client privilege applies only if "the predominant purpose of the communication is to render or solicit legal advice." *Pritchard v. Cnty. Of Erie (In re County of Erie)*, 473 F.3d 413, 420 (2d Cir. 2007). Predominant purpose must be "assessed dynamically and in light of the advice being sought or rendered," including whether the advice could be rendered only by consulting legal authorities. *Id.* at 420–21. Predominant purpose may also be informed "by the overall needs and objectives that animate the client's request for advice." *Id.* at 421.

**B. Discussion**

**1. Termination justification document**

The record before the Court indicates that the termination justification document had a predominantly business purpose and so was not privileged.[1] Describing IQVIA's ordinary termination process during oral argument, Defendant's counsel stated that termination decisions are initiated by a line manager who then uses a standard template to prepare a written termination justification for review by in-house counsel and a manager. This is consistent with operating

[1] As a threshold matter, the Court concludes that IQVIA's privilege claim was not waived by its inadvertent failure to log the document at the time of its initial disclosures, particularly given that it quickly cured the omission when notified.

procedures IQVIA submitted in opposition to the Motion to Compel, ECF 49 at 18–23, as well as the testimony of Joseph O'Donnell, head of ER, who stated: "At the time of Mr. Samela's termination those termination requests come to me, submitted by my team to myself and the employment attorneys, and we review those, and we may ask questions, we may ask to have a call, we could approve them." ECF 56-3 at 13.

IQVIA's Senior Director of Human Resources (Caryn Polin) submitted a declaration averring that that the ER team "creates the Termination Justification document, in conjunction with the impacted employee's line manager, for the specific purpose of obtaining the legal advice of IQVIA's in-house counsel on any legal risks attendant to a proposed termination action." ECF 49 at 29. However, that construction does not fit the facts here. First, the template largely asks about ordinary business considerations such as: could the employee perform the job function satisfactorily, and was he ever capable of doing so; were there prior warnings about unsatisfactory performance or behavior; what was the final incident and/or function not performed properly; were any policies violated; were there any recent changes in duties or supervisors; what coaching efforts were made; etc. ECF 49 at 24–26. Second, IQVIA contends that Plaintiff's direct supervisor, Edith Hodkinson, was the decisionmaker with respect to Plaintiff's termination, but the record indicates that Hodkinson communicated solely with ER staff, not with in-house counsel. ECF 49 at 2. Hodkinson testified at her deposition that she "believes" she filled out the termination justification without anyone else's involvement, ECF 56-1 at 16, and she then sent it to ER. *Id.* at 17. Notations on the privilege log confirm that (a) an ER employee (Nicole Stewart) supplied the template to Hodkinson in January 2024; (b) Hodkinson sent versions to Stewart and another ER employee (Mari McCabe) in February and March 2024; and (c) Stewart sent the termination justification to O'Donnell and in-house counsel

(Mary Kristen Kelly) two days later. ECF 42-9. O'Donnell testified at his deposition that he "typically" is responsible for approving termination justifications and "believes" he did so in this case. ECF 56-3 at 8–9. When asked whether he relied on the document to decide whether to approve Plaintiff's termination, O'Donnell testified: "I believe I would have." ECF 56-3 at 11.

This history demonstrates that the purpose of the termination justification document was not to obtain "the interpretation and application of legal principles to guide future conduct or to assess past conduct," which is what the Second Circuit described as the "fundamental" nature of legal advice. *In re Cnty. of Erie,* 473 F.3d at 419. Although O'Donnell testified that he had a privileged conversation with in-house counsel regarding Plaintiff, *see* O'Donnell Dep., *id.* at 8 (referring to "the privileged conversations, myself and respective counsel"), Hodkinson stated that she consulted solely with ER staff in making her decision. Specifically, she testified that she does not recall discussing or revising the termination justification document after sending it to ER, ECF 56-1 at 18, and she affirmatively testified that she never discussed the document with in-house counsel or had any contemporaneous conversations with an attorney about Plaintiff, *id.* at 19-20. In short, the alleged decisionmaker communicated solely with ER, and it is reasonable to infer from the record that Hodkinson would have communicated the same information to ER for approval regardless of whether an attorney was ultimately one of the individuals who happened to review it. It follows that the predominant purpose of those communications—including the termination justification document—was to obtain business approval for a personnel decision. Consequently, IQVIA's privilege objection regarding the document is overruled.

**2. Investigations of Plaintiff's complaints**

IQVIA fares no better with respect to its claim that three investigations of Plaintiff's complaints were privileged in their entirety. IQVIA cites three cases in its brief for the proposition that "investigations conducted by or at the direction of in-house counsel are privileged because their purpose is to inform the attorney to provide legal advice to the company." ECF 49 at 9. However, this principle is inapplicable in the present circumstances for several reasons.

First, IQVIA has not submitted any evidence indicating that an attorney directed the investigation of these three tickets. In her September 4, 2026, declaration in support of IQVIA's privilege claim over the investigation materials, Caryn Polin (Senior Director of HR) asserted that "given the nature of the allegations [Plaintiff] made in his complaints, IQVIA's in-house legal team directed the investigations and considered them privileged." ECF 49 at 30. However, the privilege log indicates that Katy Wilson handled the investigations in question, *see* ECF 42-9 (referencing RITM21691642, RITM21585063, and RITM22116798), and Polin testified at her deposition on September 10, 2026, that Wilson was part of the ER team and that the ER team investigates employee-related complaints. ECF 57-16 at 4; ECF 56-2 at 12. Polin also acknowledged that she never had any involvement with any complaint or issue concerning Plaintiff. ECF 56-2 at 13. Indeed, it is apparent from the tenor of her testimony that she had very little personal knowledge of the details of the investigation into Plaintiff's complaints. ECF 56-2 at 7-13. Given that Polin's testimony is inconsistent with her declaration, her vague

assertion in the declaration that counsel directed the investigations in question is neither persuasive nor reliable.[2]

Second, the cited cases are readily distinguishable insofar as they did not concern routine HR matters but, instead, concerned accusations so serious or so likely to result in litigation that each company retained outside counsel to conduct the investigation. *See Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 494 (S.D.N.Y. 2019) (noting that "the company's top executive was being accused of potentially serious misconduct" and "[c]ourts have often found the retention of outside litigation counsel to advise an internal investigation to be an important factor in determining whether an internal investigation is being conducted for the purpose of obtaining legal advice for the company"); *Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16-cv-1805 (JPO)(JCF), 2017 WL 3432301, at *6 (S.D.N.Y. Aug. 9, 2017) (applying work product protection where "litigation…had already been commenced," the defendant "engaged outside counsel," and the resulting report "does not appear to be in a form consistent with routine investigations of discrimination complaints"); *O'Gorman v. Kitchen*, No. 20-cv-1404 (LJL), 2021 WL 1292907, at *3 (S.D.N.Y. Apr. 7, 2021) (outside counsel "was retained only in circumstances where a legal claim might be expected and after the point where one would expect the matter to involve primarily human resources advice"). IQVIA has neither argued nor demonstrated that the matters raised in these tickets were extraordinary, involved outside counsel, or concerned impending litigation.

[2] Polin testified that she was aware that there was one report prepared in connection with an investigation into a complaint lodged by Plaintiff. ECF 56-2 at 10. However, she acknowledged that she never reviewed that report, which was prepared by Katy Wilson. *Id.* To the extent Defendant suggests that the very existence of a report indicates the investigation was conducted at the direction of counsel, Ms. Polin testified that was not necessarily the case. ECF 56-2 at 11-12.

Third, even assuming that attorney advice was solicited or provided at points of these investigations, that does not categorically shield all related documents or communications, or even entire documents to the extent that they contain both privileged and non-privileged portions. As the Second Circuit noted in *Pritchard*, "redaction is available for documents which contain legal advice that is incidental to the nonlegal advice that is the predominant purpose of the communication." 473 F.3d 413 at 421. Here, Defendant has had ample opportunity to develop a record to sustain the claim of privilege as to all or a portion of the complaint investigation materials. Beyond the conclusory assertion by Ms. Polin that the Court has found unreliable, the record is devoid of any evidence that an attorney directed or participated in any aspect of the complaint investigation. Not only is this record insufficient to sustain Defendant's blanket privilege claims over the complete investigation files, but it also fails to demonstrate that any particular documents or portions thereof were privileged.

**3. Work product objections**

Lastly, to the extent that IQVIA is objecting to disclosure of the termination justification or the ticket investigations based on the work product doctrine, the objection is overruled. As the Second Circuit explained in *US v. Adlman*, the work product doctrine articulated in Rule 26(b)(3) does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation. . . . Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation." 134 F.3d 1194, 1202 (2d Cir. 1998). Polin describes the investigations in question as "investigations conducted into allegations of discrimination [Plaintiff] made against his former supervisor." ECF 49 at 30. But even assuming that in-house counsel was consulted to assess

legal risk or provide guidance to the supervisor, the record does not demonstrate that litigation was anticipated at the time of the investigations or that the documents would not have been created in essentially the same form regardless of any anticipated litigation.

**C. Conclusion**

For the foregoing reasons, Plaintiff's Motions to Compel, ECF 42 and ECF 57, are GRANTED IN PART as follows:

1. IQVIA's privilege and work product objections are OVERRULED as to the final termination justification memorandum and any prior drafts of that memorandum.

2. IQVIA's invocation of privilege and work product protection as to the investigation of complaints RITM21691642, RITM21585063, and RITM22116798 is OVERRULED. IQVIA shall produce the complete files relating to those investigations.

This is not a recommended ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon objection timely made.

SO ORDERED, this 13th day of November, 2026, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge